IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Willie J. Copeland,                                          Case No. 3:10 CV 406

                            Plaintiff,                       MEMORANDUM OPINION
                                                             AND ORDER
                   -vs-
                                                             JUDGE JACK ZOUHARY
Regent Electric, Inc., et al.,

                            Defendants.


## INTRODUCTION

        In this discrimination case, Plaintiff alleges he was terminated because of his race, while

Defendants claim it was an unfortunate consequence of a reduction in its business and workforce.

Defendants filed a Motion for Summary Judgment (Doc. No. 26), Plaintiff opposed (Doc. No. 32),

and Defendants replied (Doc. No. 34).  For the following reasons, Defendants' Motion is granted and

the case is dismissed.

## BACKGROUND

        Plaintiff, Willie Copeland, is an African-American and a journeyman inside wireman ("JIW")

electrician.  Defendant Kevin McCarthy is the owner and president of Defendant Regent Electric, Inc.,

Plaintiff's former employer.  In July 2007, Defendants requested a JIW through Plaintiff's union,

IBEW # 8, and  Plaintiff was assigned to the Westfield School Project in Toledo, Ohio ("Westfield

Project") in August 2007.  The Westfield Project was initially staffed with a chief foreman, an

apprentice, Copeland and another JIW. These four worked on the Westfield Project for fifteen

consecutive weeks.

Following Plaintiff's hire, however, Regent Electric began experiencing a significant reduction in its payable hours.  In August 2007, Regent Electric paid out a total of 7,470.25 commercial hours, but by November 2007, Regent Electric's payable hours had fallen to 5,378.5 (Doc. No. 26-2).  Furthermore, from August through December 2007, Regent Electric lost seventeen employees -- ten through lay-offs and seven through voluntary resignations (Doc. No. 25-6).  Prior to Plaintiff's termination, Defendants transferred other employees to the Westfield Project, including four JIWs -- Mike Slomowicz, John Snavely, Ray Fuhr and Scott Roberts -- and an apprentice, Aaron Graven (Doc. No. 26-1, at 1).  Other employees were also transferred to the Westfield Project following Plaintiff's termination.

On December 11, 2007, Plaintiff was laid-off from Regent Electric, the stated reason being a reduction in workforce.  Although the collective bargaining agreement ("CBA") between Regent Electric and Plaintiff's union imposes "no restrictions . . . in hiring and laying off Employees . . ." (Doc. No. 25-9, at 6), Defendants determined JIWs would be laid-off on the basis of seniority (Doc. No. 26-1, at 1).  At the time of Plaintiff's termination, he was the least senior JIW employed by Defendants, including the four JIWs transferred to the Westfield Project prior to Plaintiff's termination  (Doc. No. 24, at 42–43; Doc. No. 26-1, at 1). Following Plaintiff's termination, Defendants' payable work hours continued to decrease, falling to 2,492.75 hours in February 2008 (Doc. No. 26-2).

After he was laid-off, Plaintiff filed a grievance with his union, a charge with the EEOC, and a complaint with the Department of Administrative Services Equal Opportunity Division.  In accordance with the CBA, the grievance was referred to the Commercial Labor Management Committee (Doc. No. 23-1, at 1–3).  The Committee, however, did not resolve the grievance, so it was

2

sent to the Council on Industrial Relations for the Electrical Contracting Industry, which found that "there was no evidence of discrimination by Regent Electric and there is no violation of the collective bargaining agreement" (Doc. No. 23-4, at 1).

The EEOC issued Plaintiff a right to sue letter, finding "reasonable cause to believe" Defendants violated Title VII (Doc. No. 1-7).  Plaintiff thereafter filed this lawsuit alleging Defendants discriminated against him on the basis of his race in violation of Title VII and R.C. § 4112.02(A).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

## DISCUSSION

### Waiver

Defendants first argue Plaintiff waived his right to pursue his discrimination claims in federal court because he voluntarily submitted to binding arbitration.  Relying on *Alexander v. Gardner-Denver Co.,* 415 U.S. 36 (1974), Plaintiff counters that no waiver occurred because the arbitration was based upon a contractual right, while his Title VII claims are based on statutory rights. *See id.* at

3

53–54 (stating that an arbitrator only has authority to resolve contractual claims and does not have the "general authority to invoke public laws that conflict with the bargain between the parties").

Although *Alexander* supports Plaintiff's position, it does not advance his claim. As Defendants correctly point out, the Supreme Court has moved away from its position in *Alexander* where it held that statutory rights are not properly resolved in arbitration. More recently, the Supreme Court stated "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA [The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*]." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see also Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 309 (6th Cir. 1991) (holding that Title VII claims may be heard in an arbitral forum). "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Furthermore, courts "resolve any doubts as to arbitrability 'in favor of arbitration.'" *Morrison v. Circuit City Stores*, 317 F.3d 646, 675 (6th Cir. 2003) (en banc) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

However, not every statutory claim is automatically subject to arbitration. Parties must first agree to the arbitration of their statutory rights. *See* 9 U.S.C. § 2 (stating that arbitration "agreements" are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Furthermore, "statutory rights, such as those created by Title VII, may be subject to mandatory arbitration only if the arbitral forum permits the effective vindication of those rights." *Morrison*, 317 F.3d at 658. "So long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its

4

remedial and deterrent function." *Gilmer,* 500 U.S. at 28.  Whether an arbitration clause meets this standard is decided on a case-by-case basis.  *See Morrison,* 317 F.3d at 659.

There is no dispute here that the Inside Agreement contained an arbitration provision (Doc. No. 25-9, at 6), that Plaintiff submitted his claims to arbitration before the Council on Industrial Relations, and the Council returned a decision in favor of Defendants (Doc. No. 23-2).  The Sixth Circuit, however, has cautioned that when it comes to the employment discrimination context, courts are not bound by the determination of arbitrators.  *See Hance v. Norfolk S. Ry.*, 571 F.3d 511, 519 (6th Cir. 2009) ("a federal court should not consider an arbitrator's decision binding in a discrimination suit, because to do so would 'unnecessarily limit[] the plaintiff's opportunity to vindicate his statutory and constitutional rights.'"); *Becton v. Detroit Terminal of Consol. Freightways*, 687 F.2d 140, 142 (6th Cir. 1982) (finding that allowing an arbitrator's decision "to answer conclusively questions raised in the final step of the *McDonnell Douglas* analysis unnecessarily limits the plaintiff's opportunity to vindicate his statutory and constitutional rights").

Instead, "a court should defer to the arbitrator's construction of the contract. Moreover, an arbitration decision in favor of the employer is sufficient to carry the employer's burden of articulating 'some legitimate, nondiscriminatory reason for the employee's rejection.'" *Becton*, 687 F.2d at 142 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Accordingly, the Council's determination that Defendants did not discriminate against Plaintiff based on his race is not binding on this Court, and this Court will address the merits of Plaintiff's claims.  *See Hance,* 571 F.3d at 519.

### *Prima Facie* Case

Plaintiff argues Defendants discriminated against him when he was laid off in December 2007 and subsequently replaced by "one (or more) of the 19 white employees Defendants reassigned to Westfield simultaneously with or following his discharge" (Doc. No. 32, at 15). Defendants counter that Plaintiff has (1) failed to make out a *prima facie* claim of discrimination, and (2) Defendants have presented a legitimate, non-discriminatory reason for its action.

Discrimination claims brought under Title VII and R.C. § 4112.02(A) are subject to the familiar *McDonnell Douglas* burden-shifting framework. To establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008); *accord Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Arendale,* 519 F.3d at 603 (quoting *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001)). If the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination. *Id.; see also Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) ("[O]nce the employer has come forward with a nondiscriminatory reason for [its actions] the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation."). Although the burden of production shifts, the ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Here, Defendants acknowledge Plaintiff meets the first three prongs (Doc. No. 26, at 9). Defendants dispute that Plaintiff "was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Arendale*, 519 F.3d at 603.

Plaintiff argues that because Defendants raised a legitimate, non-discriminatory reason for his lay off, Plaintiff does not need to establish a *prima facie* case; rather, he only needs to present evidence demonstrating Defendants' proffered reason is pretextual. This argument is without merit. Although the *McDonnell Douglas* framework shifts the burden of production at different stages, the plaintiff always has the burden of persuading the trier of fact that the defendant intentionally discriminated against him. *Burdine*, 450 U.S. at 256. This necessarily requires Plaintiff to establish a *prima facie* case.

In any event, Plaintiff has not established he was replaced by someone outside the protected class or treated differently that another similarly situated employees. "[W]hen a termination arises as part of a work force reduction," -- as occurred here -- "the fourth element of the *McDonell Douglas* test is modified to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 265 (6th Cir. 2010) (citing *Barnes v. Gencorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990)).

*Barnes* explains that "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is

7

hired or reassigned to perform the plaintiff's duties." *Barnes,* 896 F.2d at 1465.  A plaintiff could meet this fourth prong by showing, for example, he was more qualified than another employee, not within the protected class, working in the same position as the plaintiff, or the employer made statements indicative of a discriminatory intention.  *Id.* at 1465–66.

Although Plaintiff argues generally he was replaced by white employees, it is not at all clear whom he believes specifically replaced him.  On the one hand, Plaintiff claims he was "replaced by one (or more) of the 19 white employees Defendants reassigned to Westfield" around the time of his discharge (Doc. No. 32, at 15).  Elsewhere, Plaintiff claims that four, or sometimes five, white employees were transferred to the Westfield Project immediately preceding his termination, and that these employees "performed what previously had been Plaintiff's duties there for up to 13 weeks after his discharge" (Doc. No. 32, at 15 n.12).  Because Plaintiff seems to focus on these four or five employees, the Court will as well.

Plaintiff has not shown that any one of these employees was "hired or reassigned to perform the plaintiff's duties," as opposed to simply absorbing Plaintiff's job duties into their own.  *See Barnes,* 896 F.2d at 1465.  As the court in *Barnes* made clear, this is an important distinction.  Without being able to put forth some evidence demonstrating he was replaced, as that term is understood in light of *Barnes,* Plaintiff has not made out a *prima facie* case of discrimination.

Furthermore, Plaintiff has not identified any similarly situated employees that were treated more favorably.  Although he is not required to demonstrate an exact correlation with the employees allegedly receiving more favorable treatment, Plaintiff must show he is similar "in all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 334, 352 (6th Cir. 1998).  Plaintiff claims the only relevant aspect here "is each individual's ability to perform the available work

8

regardless of job title" (Doc. No. 32, at 16).  *Ercegovich* does not support Plaintiff's narrow reading.  *See Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) ("differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated.").

Here, one of the important distinctions between Plaintiff and the JIWs who allegedly replaced him is seniority.  *See Thompson v. OhioHealth Corp.*, 2008 U.S. Dist. LEXIS 100093, at *20 (S.D. Ohio 2008) ("Differences in seniority can also negate the determination that two employees are similarly situated."); *Homes-Naples v. Girard Bd. of Educ.*, 212 F. Supp. 2d 743, 750 (N.D. Ohio 2001) ("Federal courts have routinely held that employees are not similarly situated if they have differing amounts of seniority.").  At the time of his termination in December 2007, Plaintiff had the *least* seniority of *any* JIW working for Regent Electric, including the four Caucasian JIWs transferred to the Westfield Project prior to Plaintiff's discharge (Doc. No. 24, at 42–43; Doc. No. 26-1, at 1).  The reason given by Defendants for Plaintiff's termination, as well as the other JIWs that were laid off prior to Plaintiff's termination, was in fact seniority (Doc. No. 26-1, at 1).  In short, Plaintiff has not identified any similarly-situated employees who were treated more favorably, nor was he singled out for impermissible reasons when discharged.  Plaintiff therefore has failed to demonstrate a *prima facie* case of discrimination.

### Pretext

Even if Plaintiff had set forth a *prima facie* case, he cannot overcome his burden of demonstrating pretext.  Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's termination: a reduction in force.  *Arendale,* 519 at 603.  The record shows seventeen of Defendants' employees were either laid off or voluntarily quit prior to Plaintiff's discharge (Doc. No.

9

25-6; Doc. No. 26-1, at 1), and Defendants' payable hours fell by 33% from August 2007 until the end of December 2007 (Doc. No. 26-2, at 1).  Plaintiff argues the reduction in payable hours could have been caused by other factors, such as inclement weather or illness, but offers no evidence in support (Doc. No. 32, at 20).  The mere possibility of a factual dispute is not enough to overcome summary judgment.  *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986).

Accordingly, the burden shifts back to Plaintiff to demonstrate Defendants' reason is merely pretextual.  *Arendale,* 519 F.3d at 603.  To prove that Defendants' reason for the employment decision was pretext, Plaintiff is "'required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.'" *Manzer*, 29 F.3d at 1084 (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993)).

Plaintiff argues the reduction in work was not the actual reason for Plaintiff's discharge, nor was it sufficient to justify his termination (Doc. No. 32, at 20), contending: (1) prior to his termination, the crews on the Westfield Project expanded; and (2) following his discharge, there still existed approximately 2,200 hours of JIW work left on the Westfield Project which continued for thirteen weeks.  But Plaintiff ignores an initial undisputed fact: he was not the target of a "single person lay off" (Doc. No. 32, at 20), but rather was the *eighteenth* casualty in a reduction in force. The seventeen prior departures from Regent Electric, as well as the substantial reduction in payable hours, buttresses Defendants' stated reason for Plaintiff's discharge.  Plaintiff simply fails to demonstrate the reduction in force was a ruse or that it did not justify his discharge.

Plaintiff also argues Defendants' stated reason is pretext because, in two instances not involving Plaintiff, Defendants did not release other JIWs in order of reverse seniority.  From this,

10

Plaintiff asserts that "a jury likely would find Defendants' assertion that they laid off JIW's in inverse seniority order was not the actual reason they discharged Plaintiff" (Doc. No. 32, at 21). These examples, however, do not demonstrate that *Plaintiff* was terminated for a reason other than his more junior seniority. Defendants followed a general practice to lay off employees in order of reverse seniority (Doc. No. 26-1, at 1), and Plaintiff was the least senior JIW working for Defendants in December 2007.

Plaintiff's final argument for pretext is that he was not "recalled by name," like other Caucasian JIWs. This argument, however, is undermined by Plaintiff's own admission that another Caucasian JIW, Todd Wallace, was also not "recalled by name" (Doc. No. 32, at 11). These examples do not support pretext.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 26) is granted and this case is dismissed.

IT IS SO ORDERED.

_____s/ *Jack Zouhary*_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

April 5, 2011